UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAULINA KOWENA | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  No. CIV-24-275-R |
| | ) |
| WALMART, INC., et al. | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

Before the Court is Defendant DH Pace Company, Inc.'s Motion for Summary Judgment [Doc. No. 28]. Plaintiff Paulina Kowena responded [Doc. No. 33] and Defendant DHP replied [Doc. No. 36]. The Motion is now at issue. For the following reasons, DHP's Motion is GRANTED.

## Background

On November 14, 2022, Plaintiff was injured when an automatic sliding door malfunctioned at a Walmart store in Lawton, Oklahoma [Doc. No. 33-1].[1]

It is undisputed that Defendant Walmart contracted the servicing of the subject door to DHP. *Id*. ¶¶ 3, 5. Under the agreement [Doc. Nos. 28-2, 28-3], DHP serviced the door only when Walmart submitted a work order. Doc. No. 28 ¶¶ 5-6. DHP was not required to provide continuous and on-going maintenance of the door, and never serviced the door absent a request from Walmart. *Id*. ¶¶ 7-8.

---

[1]Plaintiff sued Defendants for negligence for her injuries in state court [Doc. No. 1-2]. Defendants removed the action to this Court in March of 2024 [Doc. No. 1], and Walmart subsequently settled its portion of the suit. Doc. No. 33 at p. 2.

1

Plaintiff does not dispute that DHP serviced or inspected the door on three occasions in 2022 before Plaintiff's injury. *Id*. ¶ 11. DHP first visited the store in April to perform an annual inspection, *id*. ¶ 12, then again in June to make repairs, *id*. ¶ 13, and finally, in July to complete the requested repairs and to conduct another inspection, *id*. ¶ 14.

It is also undisputed that DHP did not receive a work order from Walmart between the July repair and inspection and Plaintiff's injury, and did not otherwise visit the store. *Id*. ¶ 21. Walmart did not submit a work order to DHP on the date of Plaintiff's injury, and DHP did not return to the store until December 7th. *Id*. ¶¶ 18, 20.

Plaintiff does dispute whether the inspections and repairs were performed properly. Citing her expert Dr. Richard Hooper's report, Plaintiff avers that the door was not in compliance with the American National Standard for Power Operated Pedestrian Doors or ANSI standards on November 14th. Doc. No. 33 ¶¶ 1, 5. She further contends that DHP did not properly complete the AAADM inspections before or after the subject incident, did not complete preventative maintenance forms, and did not supply Walmart with an owner's manual for the door. *Id*. ¶¶ 2, 9, 11. Plaintiff alleges that the door malfunctioned before and after her injury, and that DHP's December 7, 2022, inspection revealed several deficiencies with the door. *Id*. ¶¶ 13, 16. She contends that Walmart's staff lacked basic training in the safe operation of automatic sliding doors, and would have known to conduct daily inspections of the door if they had the owner's manual. *Id*. ¶ 14. Dr. Hooper also noted that if industry-standard safety procedures had been followed, the door likely would not have malfunctioned on November 14th. *Id*. ¶ 12.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All evidence and reasonable inferences are viewed "in the light most favorable to the nonmoving party." *Teets v. Great-West Life & Annuity Ins. Co.*, 921 F.3d 1200, 1211 (10th Cir. 2019) (citation omitted). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994) (citation and quotation marks omitted).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Teets*, 921 F.3d at 1211 (citations and quotation marks omitted). "A movant that does not bear the burden of persuasion at trial may satisfy this burden by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim." *Id*. (citations and quotation marks omitted).

"If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." *Id*. (citation omitted). "To satisfy this burden, the nonmovant must identify facts by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*. (citations and quotation marks omitted). "These facts must establish, at a minimum, an inference of the presence of each element essential to the case." *Id*. (citations and quotation marks omitted).

"'[F]or dispositive issues on which the plaintiff will bear the burden of proof at trial, he must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to his case in order to survive summary judgment.'" *Upchurch v. Wastequip, LLC*, No. 21-7055, 2022 WL 4099433, at *4 (10th Cir. Sep. 8, 2022) (unpublished) (quoting *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007)).

## Discussion

To prevail on a negligence claim, the plaintiff must establish: "1) a duty owed by the defendant to protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care." *Smith v. City of Stillwater*, 2014 OK 42, ¶ 22, 328 P.3d 1192 (citations omitted). DHP argues that summary judgment is proper because Plaintiff cannot provide evidence sufficient to establish the essential elements of duty and causation. Doc. No. 28 at pp. 1-2.

**A. Causation**

Plaintiff has not provided evidence sufficient to permit a reasonable juror to conclude that DHP's servicing or inspection of the door was the proximate cause of her injuries.

"Actionable negligence requires that the act complained of be the *direct cause* of the harm for which liability is sought to be imposed." *Lockhart v. Loosen*, 1997 OK 103, ¶ 9, 943 P.2d 1074 (emphasis in original). "Further, whether the complained of negligence is the proximate cause of the plaintiff's injury is dependent upon the harm (for which

compensation is sought) being the result of **both** the *natural and probable* consequences of the primary negligence." *Id*. (emphasis in original). Although a negligence claim may be established by circumstantial evidence, "[a]n inference of negligence must be based on something more than mere speculation" or the fact that an accident occurred." *Gillham v. Lake Country Raceway*, 2001 OK 41, ¶ 9, 24 P.3d 858 (citation and quotation marks omitted). "'Failure to establish that the defendant's negligence was the proximate cause to the harmful event is fatal to [a] plaintiff's [negligence] claim.'" *Underwood v. Jensen Farms*, No. 6:11-CV-348-JHP, 2013 WL 6903751 at * 8 (E.D. Okla. Dec. 31, 2013) (quoting *Thompson v. Presbyterian Hosp., Inc.*, 1982 OK 87, ¶ 12, 652 P.2d 260). Typically, causation is a question of fact for the jury, but "where the evidence together with all inferences which may be properly deduced therefrom is insufficient to show a causal connection between the alleged wrong and the injury…the issue of proximate cause becomes a question of law." *Lockhart*, 1997 OK 103, ¶ 11 (citation and quotation marks omitted).

Plaintiff relies largely upon Dr. Hooper's report to support a finding of causation. Specifically, she contends that the following opinions create a reasonable inference that DHP was the proximate cause of her injury:

- The door was not in compliance with American National Standard for Power Operated Doors and/or ANSI at the time of the subject incident.

- DHP did not properly complete the AAADM inspection during the inspections that occurred before and after the subject incident.

- Industry safety procedures properly performed by DHP would more likely than not have prevented the malfunction on November 14, 2022.

- The operation of the door was not serviced properly by DHP.
- DHP did not advise Walmart to submit daily inspections.

Doc. No. 33 at p. 13. Each argument is analyzed in turn.

First, while Dr. Hooper opines that the door was not compliant with ANSI standards at the time of the subject incident, he does not fault DHP for the noncompliance. Doc. No. 33-2 at pp. 7-12. And while DHP warrants that its performance of the services under the agreement will be performed according to industry standards, Plaintiff has not provided evidence to connect DHP's last servicing and inspection in July 2022 to the deterioration of the door in November 2022. To the contrary, both the June 2022 and July 2022 inspection reports indicate that following DHP service, the door was ANSI-compliant. As DHP argues, attributing the malfunction on the date of the subject incident to repairs made four months earlier is based primarily on speculation and does not find evidentiary support from Dr. Hooper's report.

Second, in her Response, Plaintiff claims that Dr. Hooper states that DHP did not properly complete the AAADM inspection before the subject incident. But Dr. Hooper states that DHP and Walmart did not properly complete the AADM inspection *form* prior to the subject incident. *Id*. at p. 16. Specifically, they did not complete the portion of the form asking whether DHP had given, and Walmart had received an owner's manual. He does not opine that this failure caused Plaintiff's injury.

Third, Dr. Hooper states that industry-standard safety procedures would more likely than not have prevented the subject door's malfunction on the date of the incident. *Id*. at p. 17. But he does not attribute the failure to follow the safety procedures to DHP. Dr. Hooper

6

bases his opinion on two specific procedures. First, Dr. Hooper opines that daily safety inspections would have revealed a malfunction prior to Plaintiff's injury. Second, Dr. Hooper observes that the AAADM recommends proper daily safety checks, as well as periodic inspection and preventative maintenance performed by AAADM-certified technicians. Except under its agreement with Walmart, DHP could not perform daily safety inspections, as it was only permitted to service and inspect the subject door upon a work order from Walmart. For the same reason, it could not perform periodic inspections or preventative maintenance on its own volition. Therefore, while Dr. Hooper does state that these procedures would have likely prevented Plaintiff's harm, DHP was not the reason the procedures were omitted. Of note, on both the June 2022 and July 2022 inspection reports, DHP advises Walmart that the AAADM "recommends inspection of all automatic door system(s) on a daily basis to ensure safe operation[,]" and that "[a]ll automatic door system(s) should be inspected at least annually by an AAADM certified inspector." Doc. Nos. 28-5, 28-6.

Fourth, Plaintiff states that Dr. Hooper opines that DHP did not properly service the door. It is true that Dr. Hooper observes that DHP misdiagnosed the issue and did not properly repair the door on December 7, 2022. But his report is silent regarding the quality of the services provided *before* the subject incident. That a subsequent inspection and repair was inadequate does not support an inference that an inspection and repair four months prior to the subject incident was similarly faulty such that it caused Plaintiff's injury.

Finally, Plaintiff contends that DHP did not instruct Walmart to conduct daily safety checks. But as previously noted, the undisputed evidence establishes that DHP *did* instruct

7

Walmart that the AAADM recommends daily safety checks in its inspection reports, which were signed by Walmart. Doc. Nos. 28-5, 28-6. Further, Dr. Hooper includes a photograph of the daily safety inspection checklist that was affixed to the subject door. Doc. No. 33-2 at p. 6. At the bottom of the checklist is a warning stating "DO NOT USE DOOR if it fails any of these safety checks or if it malfunctions in any way. Call a qualified automatic door service company to have door repaired or serviced." *Id*. So, Walmart knew 1) that it was supposed to conduct daily safety checks, 2) how to conduct the daily safety checks, and 3) to halt use of the door if it failed a safety check or malfunctioned in any way. Thus, while according to Dr. Hooper DHP should have provided, and Walmart should have asked for an owner's manual, the information relevant to the incident was already in Walmart's possession such that DHP's failure to provide the owner's manual was not a direct cause of Plaintiff's injury.

Accordingly, because Plaintiff does not present evidence "from which the jury could reasonably find a causal nexus between the act and the injury," *Iglehart v. Bd. of Cty. Commissioners of Rogers Cty.*, 2002 OK 76, ¶ 15, 60 P.3d 497, she has failed to carry her burden of supporting the essential element of causation. Her claim under general principles of negligence necessarily fails.

    **B.  *Res Ipsa Loquitur***

Plaintiff alternatively seeks to invoke the doctrine of *res ipsa loquitur* to support her claim. Doc. No. 33 at pp. 10-12. But the doctrine is inapplicable here because she did not present evidence sufficient to support an inference that DHP was in exclusive control of the door at the time of the subject incident.

"With the aid of *res ipsa loquitur* negligence may be inferred from the harm without the aid of circumstances pointing to the responsible human cause." *Qualls v. U.S. Elevator Corp.*, 1993 OK 135, ¶ 7, 863 P.2d 457 (citations omitted). "Once the foundation facts for *res ipsa loquitur* are established, negligence may be inferred from the injurious event[.]" *Jackson v. Okla. Mem. Hosp.*, 1995 OK 112, ¶ 9, 909 P.2d 765. The foundation facts are:

- An injury that does not occur in the usual course of everyday conduct;
- The defendant(s) exclusively controlled the instrumentality that caused the injury;
- Evidence of the true explanation for the harm's occurrence is more accessible to the defendant than to the plaintiff; and
- The circumstances surrounding the harmful event are not likely to produce an injury unless the defendant fails to exercise due care to prevent its occurrence.

*Id*. at n. 17 (citing *Qualls*, 1993 OK 135, ¶ 7). Upon this showing, "the burden of producing evidence…is then shifted to the defendant." *Id*. "Whether a case is fit for the application of *res ipsa loquitur* presents a question of law; it is a judicial function to determine if a certain set of circumstances permits a given inference." *Qualls*, 1993 OK 135, ¶ 7 (citations omitted).

"The fundamental element of this evidentiary process is the control of the instrumentality which caused the damage." *Id*. (citations and quotation marks omitted). "In *res ipsa loquitur* cases, the 'exclusive control' criterion serves the function of connecting the defendant to the negligent event." *McClure v. Sunshine Furniture*, 2012 OK CIV APP 67, n. 10, 283 P.3d 323 (citation omitted). "Control is not exclusive for purposes of the *res ipsa loquitur* doctrine where the proof does not reasonably eliminate the activities of a third

party or condition having access to the instrumentality, which could alternatively be a probable cause of the plaintiff's accident." *Wheeler v. Koch Gathering Sys., Inc.*, 131 F.3d 898, 904 (10th Cir. 1997) (citation omitted). Whether a party was in exclusive control of an instrumentality for purposes of the *res ipsa loquitur* doctrine is typically a question for the factfinder if "the proof is conflicting or subject to different inferences[.]" *Harder v. F.C. Clinton, Inc.*, 1997 OK 137, ¶ 10, 948 P.2d 298. But "when one of the foundation facts is irrefutably negated[,]" the determination is a question of law within the province of the court. *Id*.

Here, Plaintiff asserts that she is entitled to an inference of negligence under the doctrine of *res ipsa loquitur*. Doc. No. 33 at p. 10. She identifies cases from outside jurisdictions in which courts have found that automatic sliding door malfunctions typically do not occur in the absence of negligence. *Id*. But her evidence is insufficient to support an inference that DHP was in exclusive control of the door at the time of the subject incident. The record evidence provided by DHP supports a contrary finding—that Walmart, not DHP was in exclusive control of the door.

Under its agreement with Walmart, DHP was only permitted to inspect and service the door pursuant to a work order submitted by Walmart's staff. Between its final pre-incident repair in July 2022 and the subject incident in November 2022, DHP received no work orders and had no indication that the door was in disrepair. It was not responsible for daily safety inspections and could not independently inspect the door. Finally, the agreement itself includes a non-exclusivity clause allowing Walmart to contract with other servicing companies—including DHP's competitors—for the same services. Doc. No. 28-

10

2, ¶ 6. Therefore, because its access to the door was expressly limited by the agreement and at the sole discretion of Walmart, the Court finds that no reasonable jury could find that DHP was in exclusive control of the door at the time of the subject incident. Accordingly, the doctrine *res ipsa loquitur* does not apply.

## Conclusion

As set forth above, Plaintiff did not provide evidence sufficient to support her claim against DHP. Accordingly, DHP's motion for summary judgment, Doc. No. 28, is GRANTED. Plaintiff represents that Defendant Wal-Mart has settled its portion of the case. Upon the parties entering a stipulation of dismissal, the Court will enter a final judgment.

**IT IS SO ORDERED** this 22nd day of January, 2025.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE